1
2
3
4
5
6                    **UNITED STATES DISTRICT COURT**
7                         **DISTRICT OF NEVADA**
8
9    RAMIRO GALICIA,
10        Petitioner,                           3:11-cv-0017-RCJ-VPC
11   vs.
                                                 **ORDER**
12   RENEE BAKER, *et al.*, [1]
13        Respondents.
14   _____/
15
16   Introduction
17        This habeas corpus action is brought by Ramiro Galicia, a Nevada prisoner serving a
18   sentence of life in prison without the possibility of parole, for the murder of Jazmin Gonzalez,[2] his
19   estranged domestic partner and the mother of his eight-year-old son.  Galicia's federal habeas corpus
20   action is before this court on its merits.  The court will deny the petition, and will deny Galicia a
21   certificate of appealability in all respects.
22
23
24
     _____
25        [1] Renee Baker is substituted for her predecessor, E.K. McDaniel, as Warden of Ely State Prison.
     Fed. R. Civ. P. 25(d).
26
          [2] In the record, the victim's name is spelled in various different manners.

1    Factual Background and Procedural History

2         As Galicia's conviction was upon his guilty plea before trial, the facts regarding the murder

3    have not been fully developed.  However, the record reflects that the State alleged -- and introduced

4    evidence at Galicia's sentencing to show -- that on November 19, 2006, Galicia, with the help of a

5    co-conspirator, rented a room at the Horizon Hotel and Casino, in Stateline, Nevada, where

6    Gonzalez was employed, and hid and waited overnight in the room, which he knew Gonzalez would

7    eventually be cleaning, and then killed her with a ball-peen hammer and a knife after she entered to

8    clean the room.  *See* Exhibit 12, pp. 19-23 (ECF No. 13-12, pp. 20-24) (statement of prosecutor at

9    March 26, 2007, arraignment and plea); Exhibit 13, pp. 18-32 (ECF No. 13-13, pp. 19-33)

10   (testimony of lead investigator at June 4, 2007, sentencing).[3]  The State alleged that Galicia took the

11   hammer, knives, duct tape, and a pair of scissors to the hotel room.  *See* Exhibit 12, pp. 19-23 (ECF

12   No. 13-12, pp. 20-24); Exhibit 13, p. 35 (ECF No. 13-13, p. 36); Exhibit 14, pp. 72-73 (ECF No. 13-

13   14, pp. 12-13) (argument of prosecutor at sentencing).  According to the State, as part of Galicia's

14   well-planned scheme, his co-conspirator gave him a ride to the hotel and registered for the room to

15   hide Galicia's identity, and then Galicia went to the room and hid and waited.  *See* Exhibit 12,

16   pp. 19-23 (ECF No. 13-12, pp. 20-24); Exhibit 13, pp. 35, 43 (ECF No. 13-13, pp. 36, 44).  The

17   autopsy showed that Gonzalez suffered 46 stab wounds, 14 incised wounds, and two blunt-force

18   trauma injuries to her skull, evidently from being struck in the head with the hammer.  *See* Exhibit

19   13, pp. 51-61 (ECF No. 13-13, pp. 52-62) (statements of prosecutor at sentencing regarding autopsy

20   report); *see also* Exhibit 14, pp. 72-73 (ECF No. 13-14, pp. 12-13).  Gonzalez was 22 years old

21   when she was killed; she and Galicia had become romantically involved some eight or nine years

22   before her death, and they had a son soon after their relationship began.  *See* Exhibit 13, pp. 17-18

23   (ECF No. 13-13, pp. 18-19).

24

25
_____

26        [3] Unless otherwise stated, the exhibits referred to in this order are those filed by Galicia with
his amended habeas petition, and located in the electronic record for this case at ECF Nos. 13 and 14.

On November 20, 2006, Galicia was charged with first-degree murder with use of a deadly weapon and in violation of an extended order for protection against domestic violence, first-degree kidnapping, and conspiracy to violate the protective order.  Exhibit 2.

Pursuant to plea negotiations, the State dropped the kidnapping and conspiracy charges, and filed an information charging Galicia with a single count of first-degree murder in violation of the protective order.  Exhibit 9.  The State also agreed not to seek the death penalty, and not to seek a deadly-weapon enhancement.  *See* Exhibit 10 (plea agreement); Exhibit 12, p. 6 (ECF No. 13-12, p. 7).  Galicia pled guilty to first-degree murder in violation of the protective order, and was sentenced to life in prison without the possibility of parole for the murder, and a consecutive prison sentence of two to five years for the violation of the protective order.  *See* Exhibits 10 and 15 (judgment of conviction).  The judgment of conviction was entered on June 7, 2007.  *See* Exhibit 15. Galicia did not appeal from the judgment of conviction.

On June 5, 2008, Galicia filed, in the state district court, a post-conviction petition for a writ of habeas corpus, and on September 15, 2008, he filed a supplement to that petition.  Exhibits 23, 30. On June 29, 2009, following an evidentiary hearing, the state district court denied the petition. Exhibit 35; *see also* Exhibit 33 (transcript of evidentiary hearing).  Galicia appealed.  *See* Exhibit 34.  The Nevada Supreme Court affirmed on November 8, 2010.  Exhibit 44.

Galicia initiated this federal habeas action on January 11, 2011.  The court appointed counsel to represent him.  *See* Order entered April 1, 2011 (ECF No. 6).  With counsel, Galicia filed an amended petition for writ of habeas corpus on October 27, 2011 (ECF No. 12).

Respondents then filed a motion to dismiss (ECF No. 21).  On September 12, 2012, the court granted that motion in part and denied it in part; the court dismissed one of Galicia's four grounds for relief (Ground 3) for failure to state a claim upon which relief could be granted.  Order entered September 12, 2012 (ECF No. 26).  Respondents then filed an answer (ECF No. 27), responding to the three remaining claims in Galicia's first amended petition (Grounds 1, 2, and 4), and Galicia filed a reply (ECF No. 29).

1    Standard of Review

2        Because this action was initiated after April 24, 1996, the amendments to 28 U.S.C. § 2254

3    enacted as part of the Antiterrorism and Effective Death Penalty Act (AEDPA) apply.  *See Lindh v.*

4    *Murphy,* 521 U.S. 320, 336 (1997); *Van Tran v. Lindsey*, 212 F.3d 1143, 1148 (9th Cir.2000),

5    overruled on other grounds by *Lockyer v. Andrade*, 538 U.S. 63 (2003).

6        28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

7            An application for a writ of habeas corpus on behalf of a person in custody
         pursuant to the judgment of a State court shall not be granted with respect to any
8        claim that was adjudicated on the merits in State court proceedings unless the
         adjudication of the claim –

9
10           (1)  resulted in a decision that was contrary to, or involved an unreasonable
         application of, clearly established Federal law, as determined by the Supreme Court
         of the United States; or

11
12           (2)  resulted in a decision that was based on an unreasonable determination of
         the facts in light of the evidence presented in the State court proceeding.

13   28 U.S.C. § 2254(d).

14       A state court decision is contrary to clearly established Supreme Court precedent, within the

15   meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set

16   forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially

17   indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result

18   different from [the Supreme Court's] precedent."  *Lockyer*, 538 U.S. at 73 (quoting *Williams v.*

19   *Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

20       A state court decision is an unreasonable application of clearly established Supreme Court

21   precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct

22   governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

23   principle to the facts of the prisoner's case."  *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at

24   413).  The "unreasonable application" clause requires the state court decision to be more than

25   incorrect or erroneous; the state court's application of clearly established law must be objectively

26   unreasonable.  *Id.* (*quoting Williams*, 529 U.S. at 409).

4

1    The analysis under 28 U.S.C. § 2254(d) looks to the law that was clearly established by

2  United States Supreme Court precedents at the time of the state court's decision. *Wiggins v. Smith*,

3  539 U.S. 510, 520 (2003).

4    With respect to questions of fact, "a determination of a factual issue made by a State court

5  shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the

6  presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

7  <u>Analysis</u>

8    <u>Ground 1</u>

9    In Ground 1, Galicia claims that his federal constitutional right to due process of law was

10  violated because his "guilty pleas were not entered knowingly, intelligently, and voluntarily...."

11  First Amended Petition (ECF No. 12), p. 7.

12    Galicia raised this claim in state court in his post-conviction petition for writ of habeas

13  corpus (*see* Exhibits 23, 30), and it was the primary subject of the evidentiary hearing held in the

14  state district court on February 5, 2009, at which Galicia, his trial counsel, and an interpreter who

15  worked extensively on Galicia's case, testified.  *See* Exhibit 33.  Following the evidentiary hearing,

16  the state district court ruled as follows:

17    Though of limited education, Mr. Galicia was able to read and write in Spanish and
   communicate with counsel through an interpreter.  Mr. Galicia had numerous
18   discussions with counsel about the facts of his case, potential defenses, the range of
   possible punishments, and the rights he would be waiving by pleading guilty.
19   Mr. Galicia asked questions of his counsel and was additional[ly] canvassed by this
   Court at his arraignment.  Mr. Galicia has failed to prove any disputed fact by a
20   preponderance of the evidence.  *Means v. State*, 120 Nev. 101 (2004).  In fact,
   Mr. Galicia frequently was unable to remember the facts relevant to his claim.
21   Mr. Galicia had sufficient present ability to consult with his lawyer with a reasonable
   degree of rational understanding and a rational as well as factual understanding of the
22   proceedings against him.  Therefore he was competent to enter his guilty plea.
   *Melchor-Gloria v. State*, 99 Nev. 174 (1983); *Dusky v. United States*, 362 U.S. 402,
23   80 S.Ct. 788 (1960).  Additionally, Mr. Galicia['s] plea was entered knowingly,
   voluntarily, and intelligently.  *Godinez v. Moran*, 509 U.S. 389, 400 (1993); *Boykin v.*
24   *Alabama*, 395 U.S. 238, 242-43 (1969).

25  Findings of Fact, Conclusions of Law and Order, Exhibit 35, pp. 8-9 (ECF No. 14-4, pp. 9-10).

26

The state district court also made the following findings:

> 1.      Mr. Galicia['s] admitted and demonstrated inability to remember the events of his proceedings undermine[s] his credibility.
>
> 2.      Mr. Young [Galicia's trial counsel] and Mr. Houghton [Galicia's interpreter] had clear and detailed recollections of events and proceedings in this matter.

>                                    *    *    *

> 6.      Mr. Galicia received a substantial benefit from his guilty plea agreement in that he was spared a possible death sentence and multiple additional convictions if he had proceeded to trial.

>                                    *    *    *

> 13.     Mr. Galicia presented no evidence of mental illness or aberration.

>                                    *    *    *

> 16.     Mr. Galicia, though possessing limited education, was able to read and write in the Spanish language.
>
> 17.     Mr. Galicia had the ability to, and did in fact, discuss and demonstrate an understanding of the facts and law in his case.
>
> 18.     Mr. Galicia demonstrated a consistent desire to plead guilty and has failed to provide any credible evidence that counsel coerced him or even advised him to enter a guilty plea.
>
> 19.     Defense counsel explained the range of punishments Mr. Galicia faced.

>                                    *    *    *

> 21.     Defense counsel explained, and the plea agreement reflects, that the sentencing court was not bound by any agreement between the parties.
>
> 22.     Nothing in the testimony or in this court's observations of Mr. Galicia indicates that there was a need for a competency evaluation.
>
> 23.     Mr. Galicia's plea was knowingly, intelligently and voluntarily entered with the effective assistance of counsel.

*Id*. at 6-8 (ECF No. 14-4, pp. 7-9).  The state district court also found the following:

> In this case, very experienced counsel had numerous discussions with Mr. Galicia about the facts of his case, potential defenses, the range of possible punishments, and the rights he would be waiving by pleading guilty.  Counsel testified that it was Mr. Galicia who insisted on pleading guilty and not going to trial, who admitted the pertinent facts that were alleged, and denied the existence of any facts that might lead to a defense or reduced charge.

1    *Id*. at 9 (ECF No. 14-4, p. 10).

2         On appeal, the Nevada Supreme Court affirmed the denial of this claim, ruling as follows:

3            Galicia claims that the district court erred in finding that his guilty plea was
     valid, contending that he did not understand the charges against him or the content of
4    the plea agreement based upon his lack of education, inability to speak or write the
     English language, and the poor translation skills of the court-appointed interpreter.
5    At the evidentiary hearing, Galicia asserted those facts and further testified that he
     had a poor memory, rarely met with his attorney, and did not understand the
6    proceedings at any stage.  His trial attorney and interpreter countered that the three
     met more than a dozen times and that Galicia attended their meetings with a list of
7    agenda items to discuss and asked follow-up questions if he did not understand
     something.  The district court did not find Galicia's testimony credible.  Galicia's
8    assertions are further undermined because, during the plea canvass, he affirmatively
     acknowledged that he understood the guilty plea agreement as read to him and
9    admitted to murdering the victim.  Thus, under the totality of the circumstances here,
     we conclude that the district court did not clearly abuse its discretion in determining
10   that Galicia's plea was knowingly, willingly, and intelligently made.  *See State v.*
     *Freese*, 116 Nev. 1097, 1106, 13 P.3d 442, 448 (2000); *Hubbard v. State*, 110 Nev.
11   671, 675, 877 P.2d 519, 521 (1994).

12   Order of Affirmance, Exhibit 44, pp. 1-2 (ECF No. 14-13, pp. 2-3).

13        It is clearly established federal law that a guilty plea must be knowing, intelligent and

14   voluntary.  *Brady v. United States*, 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242

15   (1969).  The record must reflect that a criminal defendant pleading guilty understands, and

16   voluntarily waives, his rights to the privilege against compulsory self-incrimination, to trial by jury,

17   and to confront his accusers.  *Boykin*, 395 U.S. at 243.  The long-standing test is "'whether the plea

18   represents a voluntary and intelligent choice among the alternative courses of action open to the

19   defendant.'"  *Parke v. Raley*, 506 U.S. 20, 29 (1992) (quoting *North Carolina v. Alford*, 400 U.S. 25,

20   31 (1970)).  "The voluntariness of [a petitioner's] guilty plea can be determined only by considering

21   all of the relevant circumstances surrounding it."  *Brady*, 397 F.2d at 749.  The Supreme Court,

22   while noting that a defendant's representations at the time of his guilty plea are not "invariably

23   insurmountable" when challenging the voluntariness of his plea, has stated that, nonetheless, the

24   defendant's representations, as well as any findings made by the judge accepting the plea,

25   "constitute a formidable barrier in any subsequent collateral proceedings" and that "[s]olemn

26

7

1   declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63,

2   74 (1977); *see also Doe v. Woodford*, 508 F.3d 563, 571 (9th Cir.2007).

3        Galicia argues in support of Ground 1 that he did not understand the elements of the offense

4   to which he pled guilty.  *See* First Amended Petition, p. 7.  Galicia picks out select excerpts from the

5   plea colloquy, and from the transcript of the evidentiary hearing, in an attempt to support this claim.

6   *See id*. at 7-9; *see also* Reply (ECF No. 29), pp. 2-5.  The court finds Galicia's argument in this

7   regard to be unpersuasive, and to fall well short of the AEDPA standard for federal habeas relief.

8   The state courts' ruling on this claim was well supported by the evidence presented at the

9   evidentiary hearing, and it was consistent with well-settled federal law governing pleas.

10        The Nevada Supreme Court's denial of relief on this claim was not contrary to, or an

11   unreasonable application of, clearly established federal law, as determined by the Supreme Court of

12   the United States; nor was the state courts' disposition of this claim based on an unreasonable

13   determination of the facts in light of the evidence presented in the state-court post-conviction

14   proceeding.  The court will deny habeas corpus relief with respect to Ground 1.

15       Ground 2

16        In Ground 2, Galicia claims that his trial counsel rendered ineffective assistance, in violation

17   of his rights under the Fifth, Sixth and Fourteenth Amendments, because trial counsel "failed to

18   advise Mr. Galicia of his right to file a direct appeal from his conviction."  First Amended Petition,

19   p. 10.

20        Galicia raised this claim in state court in his post-conviction petition for writ of habeas

21   corpus (*see* Exhibits 23, 30), but did little to develop it at the evidentiary hearing.  *See* Exhibit 33.

22   The Nevada Supreme Court ruled as follows on the merits of this claim:

23        Galicia also makes cursory arguments raising claims that he abandoned in the district
     court.  We need not consider those, but nevertheless conclude they are without merit:

24        (1) his appeal deprivation claim because it is without support in the record....

25   Order of Affirmance, Exhibit 44, p. 2 n.1 (ECF No. 14-13, p. 2).

26

This claim is without merit.  There was substantial evidence presented, at the evidentiary hearing in the state district court, showing that Galicia's trial counsel did in fact advise him about his right to appeal.  *See* Exhibit 33, pp. 98-100, 103 (ECF No. 14-2, pp. 99-101, 104).  Moreover, Galicia has never articulated any claim that he would have raised on a direct appeal, much less any claim that would have had any chance of success.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two prong test for analysis of claims of unconstitutional ineffective assistance of counsel:  a petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.  Galicia's claim of ineffective assistance of counsel, in Ground 2, fails on both *Strickland* prongs.

The Nevada Supreme Court's denial of relief on this claim was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceedings.  The court will deny habeas corpus relief with respect to Ground 2.

Ground 4

In Ground 4, Galicia claims that he was denied his federal constitutional right to effective assistance of counsel because his trial counsel "failed to adequately investigate and prepare to present a defense on Mr. Galicia's behalf."  First Amended Petition, p. 13.

Galicia raised this claim in state court in his post-conviction petition for writ of habeas corpus (*see* Exhibits 23, 30), but, here again, he did little to develop this claim at the evidentiary hearing.  *See* Exhibit 33.  The Nevada Supreme Court ruled as follows on the merits of the claim:

1   Galicia also makes cursory arguments raising claims that he abandoned in the district
    court. We need not consider those, but nevertheless conclude they are without merit:
2   ... (2) his claim that trial counsel ineffectively assisted him in entering his plea
    because he fails to prove or allege prejudice such that there is a reasonable
3   probability that, but for counsel's errors, Galicia would not have pleaded guilty and
    would have insisted on going to trial.

4

5   Order of Affirmance, Exhibit 44, p. 2 n.1 (ECF No. 14-13, p. 2).

6       At the evidentiary hearing in state court, Galicia's trial counsel testified that he did consider

7   whether there was any viable defense to be asserted on Galicia's behalf, and that he discussed that

8   question extensively with Galicia, but that, given the evidence against Galicia, there simply was no

9   viable defense. *See, e.g.,* Exhibit 33, pp. 83-88, 105-07 (ECF No. 14-2, pp. ). Galicia did not make

10  any showing at all in state court regarding what sort of investigation his counsel should have done,

11  what any investigation would have uncovered, or how any investigation would have prevented

12  Galicia from entering the plea agreement – a plea agreement that allowed Galicia to avoid the

13  possibility of a death penalty, and that eliminated the possibility of a deadly-weapon enhancement,

14  which might have increased his prison sentence considerably.

15      In this federal habeas action, Galicia argues that "[t]rial counsel was ineffective for failing to

16  investigate a possible defense of mental illness." First Amended Petition, p. 13. Specifically,

17  Galicia claims, his attorney "was ineffective for failing to investigate and discover records from

18  Barton Memorial Hospital reflecting that on September 23, 2006 -- less than two months prior to the

19  offense -- Galicia was admitted to the emergency room due to an anxiety attack." *Id.* Galicia

20  submits, as exhibits, records of that medical event. *See* Exhibits 46, 47, 48, 49, 50. Leaving aside

21  the obvious question whether that event, an anxiety attack several weeks before the murder, could

22  somehow have formed a basis for a defense to first degree murder, this evidence was not presented

23  in state court. *See* Exhibit 33. Galicia asks to develop this new evidence in an evidentiary hearing

24  in this action to support Ground 4. *See* Reply, pp. 8-10. Galicia is not entitled to such a hearing.

25  "Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated

26  the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011). "[E]vidence

1    introduced in federal court has no bearing on § 2254(d)(1) review.  If a claim has been adjudicated

2    on the merits by a state court, a federal habeas petitioner must overcome the limitation of

3    § 2254(d)(1) on the record that was before that state court." *Id.* at 1400.  Galicia does not do so

4    here:  the state courts' denial of relief on this claim was not contrary to, or an unreasonable

5    application of, clearly established federal law, as determined by the Supreme Court of the United

6    States, and was not based on an unreasonable determination of the facts in light of the evidence

7    presented in the state-court proceedings.  For these reasons, Galicia's request for an evidentiary

8    hearing is denied, and the court will not consider the evidence proffered by Galicia in Exhibits 46,

9    47, 48, 49, 50.

10    The Nevada Supreme Court reasonably ruled that Galicia did not show prejudice from the

11    alleged inadequate investigation and preparation on the part of his counsel, in that there was no

12    showing of a reasonable probability that, but for the alleged errors, Galicia would not have pled

13    guilty and would have insisted on going to trial.  The court will deny habeas corpus relief with

14    respect to Ground 4.

15    Certificate of Appealability

16    The standard for issuance of a certificate of appealability calls for a "substantial showing

17    of the denial of a constitutional right."  28 U.S.C. §2253(c).  The Supreme Court interpreted

18    28 U.S.C. §2253(c) as follows:

19            Where a district court has rejected the constitutional claims on the
            merits, the showing required to satisfy §2253(c) is straightforward:
20            The petitioner must demonstrate that reasonable jurists would find the
            district court's assessment of the constitutional claims debatable or
21            wrong.

22    *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79

23    (9th Cir. 2000).  The Supreme Court further illuminated the standard in *Miller-El v. Cockrell*,

24    537 U.S. 322 (2003).  The Court stated in that case:

25            We do not require petitioner to prove, before the issuance of a COA,
            that some jurists would grant the petition for habeas corpus.  Indeed, a
26            claim can be debatable even though every jurist of reason might agree,
            after the COA has been granted and the case has received full

11

consideration, that petitioner will not prevail.  As we stated in *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Miller-El*, 123 S.Ct. at 1040 (quoting *Slack*, 529 U.S. at 484).

The court has considered the issues raised by Galicia, with respect to whether they satisfy the standard for issuance of a certificate of appeal, and the court determines that none of his claims satisfy that standard.  The court will deny Galicia a certificate of appealability.

**IT IS THEREFORE ORDERED** that the Clerk shall update the docket in this case to reflect that Renee Baker is substituted for her predecessor, E.K. McDaniel, as the respondent Warden of Ely State Prison.

**IT IS FURTHER ORDERED** that petitioner's First Amended Petition for Writ of Habeas Corpus (docket #12) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall **ENTER JUDGMENT ACCORDINGLY.**

**IT IS FURTHER ORDERED** that petitioner is **DENIED** a certificate of appealability.

Dated this 13th day of March, 2014.

_____
UNITED STATES DISTRICT JUDGE

12